**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4054-16T3

J.L., a minor, and her parents,
K.L. and J.L.,

    Plaintiffs-Appellants,

v.

KANDI PRESS in her individual
and official capacities, JOAN
PABISZ-RUBERTON in her individual
and official capacities and
HARRISON TOWNSHIP BOARD OF
EDUCATION.

    Defendants-Respondents.

_____

Submitted May 8, 2018 — Decided June 25, 2018

Before Judges Fasciale and Moynihan.

On appeal from Superior Court of New Jersey,
Law Division, Gloucester County, Docket No.
L-1192-16.

Jamie M. Epstein, attorney for appellants.

Lenox, Socey, Formidoni, Giordano, Cooley,
Lang & Casey, LLC, attorney for respondents
(Michael A. Pattanite, of counsel; Christina
M. Matteo, on the brief).

PER CURIAM

Plaintiffs appeal from the trial court's orders of April 13, 2017 denying their motion for reconsideration of a February 3, 2017 order granting summary judgment to defendants and dismissing plaintiffs' complaint alleging a violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, with prejudice.[1] Plaintiffs' counsel — despite the grant of his request for an adjournment for fourteen days to file opposition — did not submit any to the summary judgment motion. We reverse and remand.

Plaintiff J.L. was a student in the Harrison Township school district with "cognitive, learning, hearing, and vision disorders" resulting from "anoxic events causing encephalopathy,"[2] which she suffered as an infant. Prior to filing the now-dismissed complaint, she and her parents filed a due process petition with the New Jersey Department of Education (DOE), alleging violations of the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. §§ 1400 to 1482, section 4 of the Rehabilitation Act (RA), 29 U.S.C. § 794, and the Americans with Disabilities Act (ADA),

---

[1] Only the order denying the reconsideration motion is set forth in plaintiffs' notice of appeal; both orders are listed as appealed in their civil case information statement.

[2] "Anoxia" is defined as, "Absence or almost complete absence of oxygen from inspired gases, arterial blood, or tissues." Stedman's Med. Dictionary 98 (28th ed. 2006). "Encephalopathy" is defined as "Any disorder of the brain." Id. at 636.

42 U.S.C. §§ 12101 to 12213. Plaintiffs asserted that the Harrison Township Board of Education (Board), its school psychologist, Kandi Press, and its director of special education, Joan Pabisz-Ruberton, failed to provide J.L. with services necessary for her to receive meaningful educational benefit, and failed to properly assess and accommodate her numerous disabilities, thus depriving her of a free appropriate public education (FAPE).[3] The administrative law judge (ALJ) to whom the case was referred declared the case moot, concluding "a controversy no longer exists" because the Board voluntarily offered "an affirmative response to all of [plaintiffs'] demands as set forth in the petition."

Plaintiffs thereafter filed a complaint in federal district court for relief under the LAD and for prevailing party attorneys' fees and costs pursuant to the IDEA and RA. The federal district judge, ruling on cross-motions for summary judgment, found plaintiff was a prevailing party for the purpose of awarding fees, but also found a reduction in fees appropriate "given the bad faith conduct" of plaintiff's counsel. J.L. v. Harrison Twp. Bd.

---

[3] See 20 U.S.C. § 1400(d)(1)(A) (stating one purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living").

of Educ. (J.L. I), No. 14-2666 RMB/JS, 2015 U.S. Dist. LEXIS 112252, at *34 (D.N.J. Aug. 25, 2015). The district judge later "decline[d] to exercise supplemental jurisdiction over [p]laintiffs' only remaining state law [LAD] claim" pursuant to 28 U.S.C. § 1367(c)(3).[4] J.L. v. Harrison Twp. Bd. of Educ. (J.L. II), No. 14-2666 RMB/JS, 2016 U.S. Dist. LEXIS 110478, at *80-81 (Aug. 19, 2016).

About a month later plaintiffs commenced this action.

Our analysis begins with the type of motion originally considered by the trial court. Both parties refer to the motion for summary judgment as one converted from a motion to dismiss pursuant to Rule 4:6-2 because the trial court was presented with seven documents that were outside the pleadings. The record, however, indicates otherwise. The notice of motion is for summary judgment; all of the supporting documents reference summary judgment including the certification of counsel, brief, statement of undisputed material facts, proof of mailing and order.

---

[4] In that same opinion, the district judge reserved on the attorney's fees issue. Later, frustrated by plaintiffs' counsel's "repeated unreasonable protraction of [the] case and his bad faith conduct throughout the litigation," she issued another opinion holding "[t]he only right and just thing for [the] [c]ourt to do — if its grant of discretion is to mean anything — is to deny outright all fees." J.L. v. Harrison Twp. Bd. of Educ. (J.L. III), No. 14-2666 RMB/JS, 2017 U.S. Dist. LEXIS 71911, at *9, 17 (D.N.J. May 11, 2017).

Confusingly, the notice of motion provides in part, "[d]efendants file this motion as a [m]otion for [s]ummary [j]udgment, rather than a [m]otion for [s]ummary [j]udgment, because pursuant to [Rule] 4:6-2(e), [d]efendants rely on materials outside of the pleadings." The trial court referred to the underlying motion in its decision as "a motion for summary judgment that has been filed by the attorney for [d]efendants Press, Ruberton and Harrison Township Board of Ed[ucation]." We conclude, as did the trial court, that the motion was for summary judgment and see no merit in plaintiffs' argument that the judge improperly converted a motion to dismiss to a motion for summary judgment.

The practice of filing and procedure for challenging a motion for summary judgment in lieu of filing an answer are long recognized. Lenzner v. Trenton, 22 N.J. Super. 415, 424 (Law Div. 1952). "A motion for summary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to 'demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)). Although summary judgment should "normally . . . not be granted when discovery is incomplete," if the motion "turns on a question of law, or if

further factual development is unnecessary in light of the issues presented, then summary judgment need not be delayed." United Savs. Bank v. State, 360 N.J. Super. 520, 525 (App. Div. 2003). Plaintiffs, who submitted no opposition to the motion, made no such showing.

After reviewing the procedural history and defendants' arguments in support of the summary judgment motion — there was never a judicial determination that J.L. was denied a FAPE by the school district and plaintiffs failed to exhaust their administrative remedies — the trial court concluded:

> In this matter there was no opposition. There was no counter argument. I should also note that this matter was adjourned one cycle to certainly provide greater opportunity for any opposition and none was forthcoming. So at this time this motion is granted and the complaint against the [d]efendants [Kandi] Press, Joan Pabisz-Ruberson and Harrison Township Board of Education is [hereby] dismissed with prejudice so ordered.

So too, in deciding the motion for reconsideration, the trial court focused on plaintiffs' counsel's dilatory conduct — both before it and in the United States District Court as there noted by the District Court judge — in finding the motion for reconsideration was not supported by excusable neglect.

A motion for reconsideration is committed to the sound discretion of the court, which should be "exercised in the interest

of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Reconsideration is appropriate only when a court has rendered a decision "based upon a palpably incorrect or irrational basis," or failed to consider or "appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria, 242 N.J. Super. at 401). We review the grant of summary judgment de novo, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). We must determine whether the competent evidence presented, "when viewed in the light most favorable to the non-moving party, [is] sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). We also review the trial court's legal conclusions de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We determine the trial court abused its discretion in denying the motion for reconsideration because its decision was based on counsel's conduct and not, at least as we can perceive from the record, on a legal basis correlated to the facts as required by Rule 1:7-4(a).

Even an unopposed motion must be thoroughly reviewed on the merits. In a matter where an attorney failed to answer a complaint

resulting in the denial of a motion to file out-of-time and a subsequent default judgment, we said:

> We appreciate the desirability of the prompt disposal of cases. Courts should not forget, however, that they merely provide a disinterested forum for the just resolution of disputes. Ordinarily, the swift movement of cases serves the parties' interests, but the shepherding function we serve is abused by unnecessarily closing the courtroom doors to a litigant whose only sin is to retain a lawyer who delays filing an answer during settlement negotiations.
>
> [Audubon Volunteer Fire Co. No. 1 v. Church Constr. Co., 206 N.J. Super. 405, 406 (App. Div. 1986).]

We then listed the recourse available to judges dealing with "slowdowns," concluding "[u]ntil courts have exhausted means of performing their shepherding function which do not terminate or deeply affect the outcome of a case, they ought not to bar a litigant's way to the courtroom." Id. at 407; see also Automatic Washer Serv., Inc. v. Brunswick Burlington, Inc., 153 N.J. Super. 343, 346 (App. Div. 1977) (holding that although counsel failed to respond to summary judgment and "walked in on the morning of court and was late at that and wanted to be heard even after the matter was disposed of," his conduct "warrant[ed] the imposition of sanctions by the court rather than dismissal of the pleadings").

We appreciate the trial court's frustration with plaintiffs' counsel's conduct. Plaintiffs, however, were entitled to the

trial court's consideration of the merits of the case where defendant contends summary judgment was properly granted because there was never a judicial determination that J.L. was denied a FAPE and that plaintiffs failed to exhaust their administrative remedies. We acknowledge a full study of these issues under the facts of this case will not be a facile task.

We previously recognized the interplay of the RA and ADA in determining the extent of protections provided by the LAD. J.T. v. Dumont Pub. Schs., 438 N.J. Super. 241, 263 (App. Div. 2014). Among the elements a plaintiff must show to establish a prima facie LAD failure-to-accommodate case is that the disabled student "was deprived 'a cognizable benefit or program.'" Id. at 264. "[W]hen a LAD discrimination claim concerns the special education benefits and related services available to a child under the IDEA, the program or benefit used to determine the prima facie test for disability discrimination is the provision of a FAPE." Id. at 265.

Although ordinarily a plaintiff need not exhaust administrative remedies prior to bringing a LAD action, Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 652-53 (1996); Ensslin v. Twp. of N. Bergen, 275 N.J. Super. 352, 372 (App. Div. 1994), "when the dispute is based upon benefits provided pursuant to the IDEA, the LAD claim is coextensive with the IDEA . . . claim[],"

J.T., 438 N.J. Super. at 268. Plaintiffs may not "make an end run around the IDEA['s exhaustion requirement] by dismissing the [administrative claim] and repackaging the claim . . . under the LAD." Id. at 267.

One of the questions here is, did plaintiffs make an end run? They filed a due process action. Although the ALJ never found that J.L. was denied a FAPE, his full decision was obviated by the Board's acquiescence to plaintiffs' demands for J.L. The ALJ found that the Board: "will complete evaluations regarding [a]ssistive technology, [v]ocational[] [s]peech pathology, [p]hysical therapy and [o]ccupational therapy"; "will amend J.L.'s [individualized education plan] to incorporate the recommendations set forth in the evaluations completed to date, including accommodations and placements set forth therein"; "will include J.L. in its [e]xtended [s]chool [y]ear [p]rogram"; "will [provide J.L. with one hundred] half-hour sessions [of compensatory occupational therapy], even though only [eighty] sessions were recommended in the [o]ccupational [t]herapy evaluation"; shall "reimburse J.L.'s parents for [the full amount of] expenses incurred for services and evaluations"; and "will not release J.L.'s records without parental consent."

Given that, as conceded by defendants in their merits brief, "[p]laintiffs were eligible for attorney's fees as 'prevailing

parties' since the [Board] offered them the relief sought in the [d]ue [p]rocess [p]etition," and the ALJ "found all the demands made by [plaintiffs] in their petition for due process had been voluntarily offered," the question is: was there a reason or basis to appeal the ALJ's decision as defendants contend was a pre-requisite to pursuing plaintiffs' state-court action? Did plaintiffs, by bringing a due process action, and settling the case, exhaust administrative remedies? And even if the ALJ was compelled to determine whether J.L. received a FAPE, would the decision have encompassed the same time frame as that for which plaintiffs seek damages under the LAD or would the period have been limited to the time the petition was filed? Further, can defendants avoid LAD liability by settling the due process matter and agreeing to provide services not previously supplied to J.L., thereby precluding a FAPE determination by the ALJ?

These are among the issues that needed to be addressed in deciding the summary judgment motion. Deciding this motion requires more than simply addressing "a single, lingering issue," and although the case has previously come before an administrative body and Federal District Court, it does not currently present a threat of perpetual, lengthy or burdensome litigation. Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 301-02 (App. Div. 2009). We thus decline to exercise original jurisdiction under Rule 2:10-

11

5; "the necessary factual findings and legal conclusions are best made by the trial judge." Id. at 302.

"Appellate review . . . 'does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered' by the trial court." Ibid. (quoting Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999)). We remand so that the issues raised can "be first decided by the motion judge, with an accompanying statement of reasons," id. at 303, fully articulating of the trial court's factual findings and correlative conclusions of law, without which we cannot know whether the court's ultimate decision was based on fact and law or was the product of arbitrary action resting on an impermissible basis, R. 1:7-4. We leave to the discretion of the trial judge whether to allow plaintiffs to file a response, with or without sanctions.

We decline to address plaintiffs' argument that the trial court dismissed their complaint "without performing its parens patriae responsibility" as that issue was not raised before the trial court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4054-16T3