**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3283-22

NICHOLAS GALLINA,

    Plaintiff-Appellant,

v.

BAUER HOCKEY, INC.,
and MONKEYSPORTS NJ, INC.,

    Defendants-Respondents.

_____

Submitted October 17, 2024 – Decided November 12, 2024

Before Judges Mawla, Natali, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1194-19.

Szaferman, Lakind, Blumstein & Blader, PC, attorneys for appellant (Thomas J. Manzo, of counsel and on the briefs; Alexandrea M. Jacinto, on the briefs).

Strongin Rothman & Abrams, LLP, attorneys for respondent Bauer Hockey, Inc. (Yelena Graves, on the brief).

Donnelly Minter & Kelly, LLC, attorneys for respondent Monkeysports NJ, Inc. (Jared J. Limbach, of counsel and on the brief).

PER CURIAM

In this personal injury action, plaintiff Nicholas Gallina challenges orders denying his motion to reinstate his complaint against Bauer Hockey, Inc., the manufacturer of an allegedly defective hockey helmet, and MonkeySports NJ, Inc., the purported retailer, after the court dismissed the case without prejudice for failure to prosecute pursuant to Rule 1:13-7(a). He argues the motion judge abused his discretion in denying the motions. We vacate the court's orders and remand for further proceedings.

We recite the following facts from the motion record. On October 11, 2015, plaintiff, then a minor, was injured in a hockey game when he collided with the boards surrounding the rink. The collision caused the mask attached to plaintiff's helmet to detach. As a result, he suffered a broken nose and other facial injuries that required surgery.

On March 29, 2019, plaintiff filed a six-count complaint against Bauer Hockey, MonkeySports, and fictitious defendants, alleging causes of action sounding in negligence and products liability. The court "administratively dismissed" plaintiff's complaint on April 15, 2019, based on a Rule 1:5-6

2

"deficiency," presumably because of plaintiff's failure to file proof of service with the court. Plaintiff's counsel subsequently filed a motion to reinstate the complaint on September 24, 2019, in which he attested he served MonkeySports and Bauer Hockey with the summons and complaint on May 16 and 28, 2019, respectively. The court granted plaintiff's application to reinstate in an October 11, 2019 order.

On November 26, 2019, Bauer Hockey's bankruptcy counsel contacted plaintiff's counsel, informing him Bauer Hockey filed for Chapter 11 bankruptcy protection on October 31, 2016. Bauer Hockey's counsel further informed plaintiff's counsel on February 13, 2020, that the Chapter 11 bankruptcy filing was successful and requested a dismissal of all claims against it. A day later, the court administratively dismissed plaintiff's complaint without prejudice for lack of prosecution under Rule 1:13-7.

Plaintiff's counsel did not take immediate action to reinstate the complaint. Instead, the record reflects that counsel continued to engage Bauer Hockey's bankruptcy counsel with requests for relevant insurance information. For example, plaintiff's counsel certified that in March 2020, he communicated with Bauer Hockey's counsel who "agreed to provide any available insurance information." He also maintained, due to the COVID-19 pandemic, he had no

3

further communication with counsel until eight months later, on October 9, 2020, when he again attempted to contact Bauer Hockey by letter. Nearly six months passed, again with no action taken to reinstate the complaint, before plaintiff received a response on April 7, 2021, with the list of insurance carriers.

Despite being in possession of the long-awaited insurance information, plaintiff's counsel continued to communicate with Bauer Hockey's counsel telephonically, in which he "discussed the nature of the case, [and] the damages." He also sent Bauer Hockey's counsel a written demand and explained the history of the matter on March 3, 2022. Communication then lulled again between the parties but when it resumed over two months later, on June 13, 2022, Bauer Hockey's counsel informed plaintiff's counsel that he would need to prosecute his complaint if he sought recovery against Bauer Hockey.

Approximately ten more months passed, when on April 18, 2023, plaintiff moved to vacate the February 14, 2020 dismissal and reinstate the complaint. Defendants filed opposition, and after considering the parties' submissions and oral arguments, the court denied plaintiff's motion and explained its decision in an oral opinion.

The court first noted the parties "stipulated" that plaintiff's Rule 1:13-7 application was guided by the extraordinary circumstances standard. Plaintiff

4

failed to satisfy that standard according to the court based on counsel's delay in filing the motion three years after the matter was dismissed, and in light of the "abundance of prejudice" caused by the passage of time, "unavailability of witnesses . . . [and] . . . evidence," including the "unavailability" of the address of a witness. It also concluded because it denied Bauer Hockey's motion, MonkeySports' application was moot.

After the court issued its decision, plaintiff's counsel sought clarification regarding the court's comment that the parties stipulated to the extraordinary circumstances standard. Counsel explained the parties agreed that under Estate of Semprevivo v. Lahham, 468 N.J. Super. 1, 11 (App. Div. 2021), the appropriate standard was good cause. After consulting the language of Rule 1:13-7, the court summarily stated, "neither [was] good cause met if that should be the controlling law."

In its written order, however, the court reaffirmed its comments in its oral decision that the extraordinary circumstances standard applied. Indeed, in a notation at the end of the order, the court stated plaintiff "failed to demonstrate extraordinary circumstances to reinstate" the matter "more than [three] years after dismissal" and reinstatement would result in "significant prejudice" to Bauer Hockey. This appeal followed.

A-3283-22

"We review the denial of a motion to reinstate a complaint dismissed for lack of prosecution for abuse of discretion." Est. of Semprevivo, 468 N.J. Super. at 11. A trial court abuses its discretion when it decides "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). We review de novo a trial court's legal determinations. Ibid. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Rule 1:13-7(a) provides "the bases for an administrative dismissal of a complaint for lack of prosecution" as well as "the standards and procedures for reinstatement, permitting a plaintiff whose complaint has been dismissed to file a motion to reinstate the complaint." Est. of Semprevivo, 468 N.J. Super. at 11.

> After dismissal, . . . [i]f a defendant has been properly served but declines to execute a consent order, plaintiff shall move on good cause shown for vacation of the dismissal. In multi-defendant actions in which at least one defendant has been properly served, the consent order shall be submitted within [sixty] days of the order of dismissal, and if not so submitted, a motion for reinstatement shall be required. The motion shall be granted on good cause shown if filed within [ninety] days of the order of dismissal, and thereafter shall be

6

granted only on a showing of exceptional circumstances.

[R. 1:13-7(a).]

In Estate of Semprevivo, we held that despite the text of the Rule, the exceptional-circumstances standard applies only "in a multi-defendant case that has proceeded against a properly served defendant prior to the filing of a motion to reinstate" and we applied in that case the good cause standard because the case had not proceeded against any of the defendants. 468 N.J. Super. at 11. Here, given that neither defendant answered the complaint, nor proceeded against either defendant in any manner, the trial court's order in which it applied the extraordinary circumstances standard was erroneous under our holding in Estate of Semprevivo. On this point, all parties agree the good cause standard applied to plaintiff's reinstatement application.[1]

---

[1] We reject with defendants' argument the court's passing reference to the good cause standard at the end of its oral decision reflected a substantive consideration of plaintiff's reinstatement motion under that standard. We also note, although we are not bound by our prior decisions, see State v. Harrell, 475 N.J. Super. 545, 564 (App. Div. 2023), we depart from them only in certain limited situations. See, e.g., State v. Rochat, 470 N.J. Super. 392, 439 (App. Div. 2022) (giving "due consideration" to prior decision's "carefully considered statements"); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 3.3 on R. 1:36-3 (2024) (noting panels of the Appellate Division "have been reluctant to interfere in long-standing, unchallenged holdings of their co-equal panels, especially if doing so would unsettle years of established procedure").

We have considered applying the good cause standard to determine if the record supports reinstating the complaint, the procedure followed by the Estate of Semprevivo court, but conclude it would be improper, as to do so on the current record would be effectively invoking our original jurisdiction under Rule 2:10-5, which we employ "sparingly and only in clear cases that are free of doubt." Henebema v. Raddi, 452 N.J. Super. 438, 452 (App. Div. 2017). Rather, we are convinced a remand is appropriate for the court to consider the record anew after applying the correct legal standard and with the opportunity to make additional factual findings and legal conclusions specific as to each defendant, and, on this point, note the court did not make any findings as it related to MonkeySports, instead dismissing its application as moot. We provide the following additional comments to assist the court on remand.

"[T]he term, 'good cause,' evades a precise definition." Est. of Semprevivo, 468 N.J. Super. at 14. "[C]ourts applying the good cause standard must exercise 'sound discretion in light of the facts and circumstances of the particular case considered in the context of the purposes of the [c]ourt [r]ule being applied.'" Ibid. (quoting Ghandi v. Cespedes, 390 N.J. Super. 193, 196

---

We discern no basis to depart from our holding in Estate of Semprevivo here, particularly in light of the parties' agreement as to the applicability of the good cause standard.

(App. Div. 2007)).  Providing only for dismissals without prejudice, <u>Rule</u> 1:13-7(a) "is an administrative rule 'designed to clear the docket of cases that cannot, for various reasons, be prosecuted to completion.'"  <u>Ghandi</u>, 390 N.J. Super. at 196 (quoting <u>Mason v. Nabisco Brands, Inc.</u>, 233 N.J. Super. 263, 267 (App. Div. 1989)).  "Accordingly, the right to 'reinstatement is ordinarily routinely and freely granted when plaintiff has cured the problem that led to the dismissal even if the application is made many months later.'"  <u>Ibid.</u> (quoting <u>Rivera v. Atl. Coast Rehab. & Health Care Ctr.</u>, 321 N.J. Super. 340, 346 (App. Div. 1999)).  "[A]bsent a finding of fault by the plaintiff and prejudice to the defendant, a motion to restore under the rule should be viewed with great liberality."  <u>Id.</u> at 197.

When denying defendants' motions, the court was understandably concerned regarding the reasons proffered for plaintiff's delay in seeking reinstatement, no doubt because that extensive delay continued well after plaintiff's counsel received the insurance information relied on as the ostensible reason for his inaction.  However, as noted, a good cause analysis under <u>Rule</u> 1:13-7(a) requires the court to consider plaintiff's role in the delay as well as demonstrated prejudice.

Thus, on remand, when considering plaintiff's application, the court should evaluate what role, if any, plaintiff played in the delay, as well as any specific, as opposed to general, claims of prejudice. We recognize before us, Bauer Hockey maintains it was prejudiced because service was not properly effectuated as the individual who accepted service on its behalf was not so authorized. It also contends that individual is no longer employed by Bauer Hockey and it does not possess her current contact information.

In its oral decision, the court made no specific finding that plaintiff had failed to effectuate proper service. On remand, the court should consider Bauer Hockey's claim of prejudice including, but not limited to, its contention it was not properly served as well as its inability to locate its former employee to establish that fact. We stress any prejudice analysis must be fact-based and not grounded in unsupported generalities regarding witness unavailability or the mere passage of time. In this regard, the court should also consider that according to plaintiff, his counsel remains in possession of the purportedly defective helmet. See Est. of Semprevivo, 468 N.J. Super. at 14-16 (delay caused by plaintiff counsel's staffing issues satisfied good cause standard when defendant failed to establish prejudice); Giannakopoulous v. Mid State Mall, 438 N.J. Super. 595, 608-09 (App. Div. 2014) (good cause shown when no

showing of prejudice and no evidence of plaintiff's fault when counsel improperly served corporate defendant); Baskett v. Kwokleung Cheung, 422 N.J. Super. 377, 384-85 (App. Div. 2011) (three-year delay in serving defendant did not defeat "good cause" finding in light of plaintiff counsel's inattention); Weber v. Mayan Palace Hotel, 397 N.J. Super. 257, 262 (App. Div. 2007) (good cause found in confusion created in attempting to identify and serve defendants located in foreign countries).

Further, on remand, the court should make specific findings as it relates to MonkeySports. The court incorrectly concluded that resolution of the claims against Bauer Hockey rendered MonkeySports' application moot because plaintiff filed direct claims against it. Second, the facts supporting plaintiff's application to reinstate its claims against MonkeySports are distinct from those related to Bauer Hockey. Indeed, before us, plaintiff provided no explanation for its failure to prosecute its claims against MonkeySports, instead limiting its explanation for the delay to its interactions with Bauer Hockey's counsel.

Moreover, MonkeySports' prejudice claim included the certification of one of its owners, who stated it no longer possessed any of the sales records from 2015, the date of the purported sale of the defective helmet to plaintiff. On remand, the court should address, specifically, any prejudice visited upon

11

MonkeySports as a result of the alleged destruction of relevant records, or any other bases. The court may consider, among any other issues the court deems necessary for a comprehensive analysis of the prejudice issue the following: when the records were destroyed as well as the contents and substance of those records; how they may have supported plaintiff's claims and any defense; and if the records or relevant information could be obtained from Bauer Hockey, or another source.

Finally, we stress that nothing in our opinion should be interpreted as a reflection of our views on the outcome of the remanded proceedings.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3283-22